**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 06-218-JBC**

**LINDA KAYLOR,**                                                                    **PLAINTIFF,**

**V.**                                  **MEMORANDUM OPINION AND ORDER**

**JO ANNE BARNHART, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                                        **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Disability Insurance Benefits (DE 4, 7).  The court, having reviewed the record and being otherwise sufficiently advised, will grant the plaintiff's motion and deny the defendant's motion.

**I. Overview of the Process**

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).  "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not

decide questions of credibility.  *See id.*  Rather, the ALJ's decision must be affirmed

if it is supported by substantial evidence, even though the court might have decided

the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th

Cir. 1999).

   The ALJ, in determining disability, conducts a five-step analysis.  At Step 1,

the ALJ considers whether the claimant is performing substantial gainful activity; at

Step 2, the ALJ determines whether one or more of the claimant's impairments are

"severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly

or in combination, meet or equal a listing in the Listing of Impairments; at Step 4,

the ALJ determines whether the claimant can perform past relevant work; and,

finally, at Step 5 –  the step at which the burden of proof shifts to the

Commissioner –  the ALJ determines, once it is established that the claimant

cannot perform past relevant work, whether significant numbers of other jobs exist

in the national economy which the claimant can perform.  *See Preslar v. Sec'y of*

*Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. §

404.1520.

## II. The ALJ's Determination

   The plaintiff is a fifty-five-year-old female with an eighth-grade education and

has past relevant work ("PRW") as a laborer, salesperson, department manager,

and cashier.  AR 20.  She alleges disability beginning on September 6, 2002.  AR

20, 48.  The plaintiff filed a claim for Disability Insurance Benefits ("DIB") on

November 21, 2003, *see* AR 48, which was denied initially and on reconsideration.

AR 33-36, 38-40.  After a hearing held on September 21, 2005, Administrative

Law Judge ("ALJ") Don C. Paris determined that the plaintiff did not suffer from a

disability as defined by the Social Security Act.  AR 19-24.  At Step 1, the ALJ

determined that the plaintiff had not engaged in substantial gainful activity.  At

Step 2, the ALJ found that the plaintiff's coronary artery disease and degenerative

disc disease of the lumbar spine were severe impairments.  The ALJ then

determined that the plaintiff's impairments did not meet or equal a listing in the

Listing of Impairments at Step 3.  At Step 4, the ALJ found that the plaintiff was

unable to perform her PRW.  The ALJ concluded at Step 5, however, that the

plaintiff could perform a significant number of other jobs in the national economy at

the light exertional level and that she was therefore not disabled.  AR 23-24.  On

May 10, 2006, the Appeals Council denied the plaintiff's request for review, AR 7-

9, and the plaintiff then commenced this action.

### III. Legal Analysis

The plaintiff claims that the ALJ erred in: (1) failing to consider critical

medical evidence; (2) failing to give proper deference to the findings of the

plaintiff's treating physician, Dr. Shazia Shamin; and (3) failing to properly

evaluative her subjective symptoms and/or her credibility.

### A. The ALJ's Evaluation of the Medical Evidence

The plaintiff claims that the ALJ improperly failed to consider the records of

the plaintiff's treatment at the White House Clinic on August 8, 2005, and

September 16, 2005.  AR 363-66.  These records do not specify the name of the

physician who examined the plaintiff on these days, nor does the plaintiff supply

that name. However, the special report completed by the plaintiff's treating

physician, Dr. Shazia Shamin, indicates that Dr. Shamin's work address is the same

as that of the White House Clinic, *see* AR 329-32, and the plaintiff testified that

Dr. Shamin was her treating physician at the time of these examinations. AR 383-

85. The court therefore presumes that Dr. Shamin is the physician who examined

the plaintiff on August 8 and September 16, 2005. The plaintiff's argument that

the ALJ ignored these reports is thus dealt with in the following section.

### B. The ALJ's Evaluation of Dr. Shamin's Opinions

The Commissioner's regulations provide that the Social Security

Administration will "give more weight to opinions from [a claimant's] treating

sources . . . . If we find that a treating source's opinion on the issue(s) of the

nature and severity of your impairment(s) is well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in your case record, we will give it controlling weight." 20

C.F.R. §404.1527(d)(2). The Sixth Circuit has also repeatedly held that the

opinions of a treating physician are entitled to significant deference. *See, e.g.,*

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Farris v. Sec.*

*of Health and Human Servs.,* 773 F.2d 85, 90 (6th Cir. 1985); *Harris v. Heckler*,

756 F.2d 431, 435 (6th Cir. 1985). If the opinion of a treating source is not

accorded controlling weight, the ALJ must consider factors such as the length of

the treatment relationship and frequency of examination, the nature and extent of

4

the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and specialization of the source in determining the weight to give the opinion. *Wilson*, 378 F.3d at 544.  An ALJ must give good reasons for rejecting the opinion of a treating physician. *Id.*; 20 C.F.R. § 404.1527(d)(2).  An ALJ may also reject the opinion of a treating physician when that opinion is not sufficiently supported by medical findings. *Walters v. Comm'r*, 127 F.3d 525, 530 (6th Cir. 1997); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).

On February 15, 2005, Dr. Shamin opined that the plaintiff was unable to lift more than five pounds and that she could not stand and/or walk for more than four hours in a day.  AR 330.  The ALJ rejected these limitations as inconsistent with the other medical evidence in the record and with the plaintiff's reported testimony. AR 22.  The ALJ principally based his rejection of Dr. Shamin's opinion on the fact that it was inconsistent with examinations of the plaintiff performed by Dr. Leon Ravvin in September and December of 2002.  AR 188-89.  In both of those examinations, Dr. Ravvin found that an MRI performed on the plaintiff on September 24, 2002, (which Dr. Ravvin noted was "not an excellent quality MRI scan") showed degenerative disc disease with some mild bulging of the disc.  *Id.* Dr. Ravvin did not find evidence of distinct disc herniation or spinal stenosis.  *Id.* The ALJ also found that Dr. Shamin's opinion was inconsistent with notes of the plaintiff's treatment during 2002 and 2003.  AR 219-76.  However, Dr. Shamin's opinion was rendered in February of 2005, more than two years after Dr. Ravvin

5

examined the plaintiff and over one year after her most recent treatment by any physician other than Dr. Shamin.  Particularly where, as here, a claimant suffers from degenerative disc disease, a condition that generally worsens, a subsequent opinion is not necessarily inconsistent with a more favorable evaluation that preceded it by a significant amount of time.  Also, since Dr. Shamin examined the plaintiff more recently than her earlier physicians, she was able to rely on a more detailed treatment history in forming her opinions than the plaintiff's earlier physicians were.

The Commissioner argues, however, that the record does not support a conclusion that the plaintiff's condition deteriorated in the time between her prior treatment and her treatment by Dr. Shamin.  This argument is belied by Dr. Shamin's treatment notes that were recorded in August and September of 2005, in which Dr. Shamin stated that the plaintiff's back pain was "worsening."  AR 364, 366.  Further, although the ALJ noted that the plaintiff's straight leg raise test was negative, *see* AR 22, Dr. Shamin found that it was positive, a conclusion that was not discussed by the ALJ.  AR 364, 366.  Dr. Shamin also recommended that the plaintiff be referred to a neurosurgeon and prescribed a cane for the plaintiff to use as needed.  AR 363, 366.  These treatment records support Dr. Shamin's restrictive functional capacity assessment and also suggest that the plaintiff's condition did deteriorate since the examinations performed in 2002 and 2003.  The ALJ's failure to discuss Dr. Shamin's 2005 treatment notes suggests that he either did not consider them (as the plaintiff argues) or that he rejected them without

6

providing any justification for doing so.

In addition, the record suggests that Dr. Ravvin examined the plaintiff only twice: once in September of 2002, and again in December of 2002. AR 188-89. Dr. Shamin has been the plaintiff's treating physician continuously since September of 2004. AR 384. If the ALJ considered the length-of-treatment factor in evaluating the medical evidence, he certainly did not say so.

The ALJ also found that Dr. Shamin's opinion was inconsistent with the plaintiff's testimony that she experiences pain-free days along with intermittent "bad spells." AR 22. However, the plaintiff wrote in a questionnaire that her pain affected her "to a certain extent" every day, *see* AR 57; this statement undermines the ALJ's finding that the plaintiff has pain-free days. She also testified that when her pain did arise it was difficult for her to do anything at all. *Id.* Finally, even if the plaintiff's testimony had been exactly as the ALJ reported it, Dr. Shamin's functional capacity assessment is not inconsistent with a finding that the plaintiff's pain is intermittent.

In sum, the ALJ relied on the opinions of physicians who had not examined the plaintiff in the two years preceding her hearing (one of whom examined the plaintiff only twice and relied on an imperfect MRI in his diagnoses) over the opinion of Dr. Shamin, who has treated her from September 2004 forward. In doing so, he apparently failed to consider Dr. Shamin's treatment notes, which buttress her functional capacity assessment. Finally, the ALJ erroneously found that the plaintiff's reported symptoms were inconsistent with Dr. Shamin's opinion. The

7

court finds that the ALJ erred in his evaluation of Dr. Shamin's opinions and will reverse the ALJ's decision denying the plaintiff's claim for benefits.

### C. The ALJ's Credibility Assessment

Since the ALJ has the opportunity to observe the plaintiff, his credibility determinations are entitled to deference when they are supported by substantial evidence in the record. *See Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 230-31 (6th Cir. 1990). An ALJ's credibility finding, however, must be supported by substantial evidence. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984); *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so.").

ALJ Paris determined that the plaintiff's subjective complaints of pain were not credible because they were "not supported by the medical evidence of record or [her] level of activities as she reports them." AR 22. The court has already found, however, that the ALJ improperly evaluated the medical evidence in the record. *See* Part III.B. Therefore, the ALJ's finding that the plaintiff's subjective complaints are not supported by the medical evidence is also flawed.

There is also nothing about the plaintiff's reported daily activities that is inconsistent with her complaints of pain. The plaintiff has stated that she can cook, wash dishes (with frequent breaks), shop for groceries, and drive a car once a week. AR 109. She also states that she cannot mow the grass, mop, or vacuum, and that she does not shop. *Id.* The plaintiff alleges that her daily

8

activities consist mostly of "straightening up" her house, watching television, and talking on the telephone.  AR 110.  The ALJ did not specify which of these activities he believed was incompatible with the plaintiff's complaints of pain, but the court does not see any inconsistency between the plaintiff's symptoms and her lifestyle.  The plaintiff does not engage in any activities that would suggest that she experiences any less pain than she claims.  Because both of the reasons given by the ALJ for finding the plaintiff lacked credibility are stated in vague terms and are unsupported by the evidence in the record, the court finds that the ALJ's credibility determination was not supported by substantial evidence.

### D. Remand to the Commissioner

Having found that the ALJ's decision in this matter was not supported by substantial evidence, the court must consider what action the Commissioner must pursue on remand of this case.  If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).  When there is not substantial evidence to support one of the ALJ's factual findings and his decision must therefore be reversed, however, the appropriate remedy is not to award benefits, but instead to remand the case under sentence four for further consideration.  *Id.* at 175-76.

The court has concluded that the ALJ's evaluations of Dr. Shamin's opinion

9

and the plaintiff's credibility are not supported by substantial evidence.

Nonetheless, the court does not find that all factual issues have been resolved or

that the record adequately demonstrates the plaintiff's entitlement to benefits.  The

court will therefore remand this action to the Commissioner for further

consideration in accordance with this opinion.  Specifically, the Commissioner must

reconsider the weight to be given to Dr. Shamin's opinion; in doing so, the

Commissioner shall explicitly address the issues presented in Part III.B of this

opinion.  The Commissioner must also reevaluate the plaintiff's credibility in light of

Part III.C of this opinion.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for summary judgment (DE 4) is

**GRANTED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary

judgment (DE 7) is **DENIED**.

**IT IS FURTHER ORDERED** that, pursuant to sentence four of 42 U.S.C. §

405(g), this matter is hereby **REMANDED** to the Commissioner for further

proceedings in accordance with this opinion.

Signed on March 19, 2007

10

*Jennifer B. Coffman*

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY